[No. 4284.]

## THE PEOPLE EX REL. THE COLORADO BAR ASSOCIATION v. JOHN C. KEEGAN.

**1. Attorneys at Law—Disbarment—Retention of Money Collected for Client—Demand.**

In a disbarment proceeding under the statute against an attorney for retaining money collected for a client a demand upon the attorney for the amount due and a tender of his fees and expenses must be made before the disbarment proceedings are begun.

**2. Same—Paying Money After Commencement of Proceedings.**

In a disbarment proceeding against an attorney for retaining money collected for a client, the fact that the money was turned over to the client after the proceedings were commenced is no defense.

**3. Attorneys at Law—Retention of Money Collected for Client—Disbarment—Demand.**

Where a client repeatedly called on her attorney for a settlement after he had collected money for her and no question was raised as to the amount of the attorney's fees, it was sufficient demand to sustain a disbarment proceeding, although no formal or technical demand was made.

**4. Same.**

Where an attorney at law who collected money for a client which he failed to turn over, denied having made the collection and deceived his client by false statements in regard to the collection, his conduct waived the necessity of a demand on him for the money before commencing disbarment proceedings against him.

*Original Proceeding for Disbarment.*

Mr. C C. POST, attorney general, and Mr. CARLETON M. BLISS for petitioner.

Mr. GEORGE W. TAYLOR, for respondent.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

There are three separate charges of unprofessional conduct set out in the information, the third of which was abandoned by counsel for petitioner at the hearing.

The first is that respondent, in his capacity as attorney, collected from one Rodebaugh for his client, Mrs. Louisa Treml, the sum of $12.15; the second, that in the same capacity and for the same client he collected from one Van Horn the sum of $52.00 which he failed to pay over on demand.

In his answer respondent admits the collection of the money and seeks to justify his failure to give it to his client on two grounds:—First, that no demand for either of the collections was ever made upon him until after these proceedings were brought, at which time he paid to her more than the total amounts collected. Second, that he did not sooner pay the Van Horn collection because his accounts were so mixed and confused that he was unable to ascertain the amount to which his client was entitled.

Certain preliminary objections as to the right of the bar association to institute and prosecute the proceedings in the name of the people upon the relation of the attorney general, and as to the sufficiency of the petition, must be resolved against respondent upon the authority of *People ex rel. v. Mead,* 29 Colo., 344, 68 Pac., 241.

Petitioner asserts, and respondent denies, that this proceeding is to be determined as though there was no statute covering the particular misconduct complained of. While it is true that since this court has the power to admit attorneys to practice law in this state, it has the inherent power to disbar them

for unprofessional conduct, still the present proceeding does not invoke that inherent power, but is based upon the statute. The statute, which is a reasonable regulation, requires, as a condition precedent to the maintaining of proceedings for such misconduct as is here charged, a demand to be made upon the attorney for the payment of the amount due, and a tender of his fees and expenses. We therefore can not hold that this proceeding is based upon the inherent power of the court to disbar for unprofessional conduct. A demand must be made before the proceedings are begun, or a state of facts shown which excuses or waives it. And this leads us to a consideration of the evidence in the case.

There is a conflict therein in some particulars. With respect to the first charge respondent testifies that sometime in the month of October or November, 1899, his client, Mrs. Louisa Treml, gave him an account of $12.15 for collection against one J. M. Rodebaugh. According to the testimony of several witnesses for the petitioner, the time was fixed as December 5th. The attendant circumstances satisfy us that the witnesses for the petitioner are right. Ordinarily the exact time is not material, and is not, as we consider it, of much importance here, for it is admitted that the account was collected in the latter part of December, 1899. Mrs. Louisa Treml is an illiterate woman of German birth, whose understanding of the English language and business methods is limited, but her testimony is so reasonable and natural, her innocence of anything wrong so apparent, and all the circumstances of the case so corroborative of her story, that we are led to believe it true, in every substantial particular. She testifies that on different occasions she applied to respondent to get a settlement of this claim, and that he told her that Rodebaugh was dead, and that he had not collected any

money from him.   After these proceedings were brought on the 25th of October, 1900, respondent paid to his client more than the amount of the claim, and to excuse the delay in settlement, says that his client first gave the name of the debtor as "Rodebush," and that the letter which he sent to Portland, Oregon, to Rodebush, with reference to the same, was returned unopened and unanswered with the endorsement on the envelope that the man was dead; that afterwards Mrs. Treml gave him the correct name and he thereupon sent the account for collection to his correspondents in Portland, Oregon, with the result that the same was paid in the latter part of December, 1899.   The fact that respondent turned over this collection after these proceedings were instituted is no excuse, and it is clear to us that the explanation which he gives for his delay is an afterthought, and that Mrs. Treml's version of the transaction is correct.   Even if at first she gave him the wrong name of the debtor, the fact stands out prominent that the money was collected in December, 1899, and there was no excuse for withholding it from his client for about ten months after its reception.

Second:—The facts with reference to the second charge are that Mrs. Treml employed respondent as an attorney to collect a claim amounting to $65 from Van Horn, of which he collected on the following dates, respectively:   On December 5th, 1899, $15; January 26th, 1900, $5; March 5th, 1900, $12; March 26th, 1900, $10; May 1st, 1900, $10.   The respondent testifies, and this is not denied, that he was to receive for his services 25 per cent. of the amounts collected. The first three payments, less his commission, were turned over to Mrs. Treml soon after they were received, but neither of the last two payments until after these proceedings were brought.   His explanation for such failure is that he was ill during a part

of January, February, March and April, of 1900, and that these sums were collected by some one in his office, and his accounts became somewhat confused, and he was unable to ascertain just what sum was due to his client. He testifies that he repeatedly tried to persuade her, without success, to come to his office for a settlement. It is, to say the least, strange that one should reject efforts made to furnish him with money. She testifies that she repeatedly endeavored to get a settlement from him, but without success, though he did claim that he did not know the exact state of the account. In the latter part of August he wrote to Mrs Treml in response, as she says, to an interview she had with him a few days before, to come to his office, so that they might effect a settlement. She says that she responded to that request, and then, as theretofore, tried to get her money. At first respondent denied that she came to see him, but, upon cross-examination, admits that he did see her about this time. At any rate, until after these proceedings were brought he did not pay to her all of these collections which had been made from Van Horn, the last two payments on which, according to his own statement, were made to him not later than the first of June preceding, and then, in October, he paid her $7 more than the total amount which he had collected, less his fees, in explanation of which he says that he did it in order to get rid of her. She testifies that she offered to repay the $7, which he declined to receive. It further appears from his own letter and from letters he received from Van Horn, that at the very time respondent claims he was telling his client that he did not know the status of her account, he had received the last two payments, and knew it from data in his own possession, and yet falsely pretended to her that his accounts were mixed up.

It is also in evidence that after the pro-

ceedings were brought, respondent, in connection with a friend, endeavored to dissuade Mrs. Treml from appearing and testifying against him. He justifies this action upon the ground that he wished to avoid the attendant public disgrace, and that he did nothing improper by way of argument or otherwise to influence her action. The evidence, however, impresses us with the conviction that the influences brought to bear and the methods adopted in this direction, were highly improper and tend to cast suspicion upon his good faith and upon the version of the transaction which he gave at the hearing. His testimony is inconsistent in several particulars with itself, which we do not deem it necessary to point out. It is sufficient to say that respondent has been shown by the evidence to be guilty of the first two charges preferred against him.

A strictly formal or technical demand was not made. No question is raised about the fees. Respondent himself testifies that he took out of the collections turned over, the amount of his commission, and this money he had in his own possession, and it was deposited, as he claims, to his credit in the bank and had been there ever since it was collected. He does not pretend that he ever told his client that he had received any part of this money except the first three payments upon the Van Horn claim, although she repeatedly asked him about a settlement and went to him for the purpose of getting the money. A demand in explicit words may not have been made, still the respondent himself, in his own testimony, makes it clear that he understood that Mrs. Treml was demanding this money when he had the various interviews with her and the testimony bears out the statement that, in substance, a demand was made. Though the statute requires it, yet there may be such conduct by the attorney as to waive or excuse the

same, and if driven to that resort, it might well be said that respondent's conduct was such that a demand was rendered wholly unnecessary. According to Mrs. Treml's testimony, he told her that Rodebaugh was dead and that collection of that claim had not been made, and that only three payments on the Van Horn account had been received. Upon the supposition that his statement was true, there was no reason why a demand should be made, and, if made, would have been unavailing. His misstatements with respect to the accounts, the suppression of the facts, and the deception practiced upon his client, of themselves excuse a demand.

Respondent's name must be stricken from the roll of attorneys of this state, and it is so ordered.

Mr. JUSTICE STEELE not participating.