[No. 4189.]

THE PEOPLE EX REL. THE COLO. BAR ASSOCIATION v. CLINTON V. MEAD.

1. ATTORNEYS AT LAW—DISBARMENT PROCEEDINGS—PRACTICE.

In disbarment proceedings where the petition is upon the relation of the Colorado Bar association neither the petition of the association nor the information of the attorney general is required to be under oath.

2. SAME—EVIDENCE—REFEREE.

In disbarment proceedings the practice in Colorado is to have the evidence taken and reported by a referee.

3. SAME—EMBEZZELMENT—TRIAL AND ACQUITTAL.

The fact that an attorney at law has been tried and acquitted on a charge of embezzment, does not affect the question as to whether he has been guilty of professional misconduct in the transaction, for which he should be disbarred.

4. ATTORNEYS AT LAW—DISBARMENT—DECEPTION OF CLIENT.

Where an attorney at law accepted money from a poor woman upon an employment to procure for her a divorce and represented to her that he had brought the suit, but failed to do so, although he knew of the defendant's presence at the place where suit was to have been brought and his client discovering his deceit employed other counsel to procure the divorce for her, and demanded the return of the money she paid him, which he refused to return, he was guilty of professional misconduct for which he will be disbarred.

## Proceeding in Disbarment.

The ATTORNEY GENERAL and Mr. THOMAS H. HOOD for petitioner.

Mr. SAMUEL E. BROWN and Mr. O. N. HILTON for respondent.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

This proceeding is for the disbarment of Clinton V. Mead, an attorney of this court. In the information are two charges against him of professional misconduct: (1) In accepting a retainer from a client to obtain for her a divorce, and then retaining the fee paid for, and failing to act in accordance with the terms of, the employment; (2) fraudulent misconduct in handling a $630 certificate of stock in a building and loan association belonging to a client, which was placed in his hands for collection, and on which he collected the sum of $580, and refused to pay over the proceeds.

1.  Before considering the merits, we shall dispose of an objection which strikes at the foundation of the proceeding. The petition for disbarment is upon the relation of the Colorado Bar association, which is an incorporated organization composed of many of the leading lawyers of the state. It has a grievance committee, one of whose duties is to examine into charges preferred against attorneys to enable the association to take such action as the facts warrant. When, in its opinion, such investigation shows that an attorney is probably guilty of conduct which disqualifies him for membership in the profession, the practice is to tender for filing to the supreme court an unverified petition, with the association as relator, setting forth the facts constituting the supposed misconduct. If it appears to the court that a judicial investigation should be had, the petition is then referred to the attorney general with instructions to him to embody the charges in an information and present the same to the court; and thereupon the attorney general signs an information, not under oath, and files the same in the court, and a rule is granted against the respondent to show cause why he should not be disbarred. Our practice requires the attorney to make full answer under oath.

Respondent now objects to the petition and information in this case because the same is not based upon the oath of some credible person.

In *Ex parte Burr*, 9 Wheaton 529, it was said by Chief Justice Marshall that it was admitted in the pending proceeding that a regular complaint against an attorney ought not to be acted upon unless made under oath. The point, however, was not judicially determined because the inquiry was invoked by the respondent, the charges were made at his instance,

and the court proceeded upon them at his request; and it was held that the prelininary step of an affidavit to the charges which constituted the subject of the inquiry was thus dispensed with by the respondent himself.

Undoubtedly the general and better rule is that such charges should be under oath, but the practice hereinbefore indicated has grown up in this jurisdiction. And where the rule is strictly enforced, as it is here, that respondent must be duly notified and given full opportunity to defend, and the charges, even on default, must be made out by clear, convincing and satisfactory evidence before an attorney is disbarred, we think his rights are amply protected even though the charges in the first instance are not under oath. The standing of the bar association and the requirement that the information be signed and presented by, and the proceeding be under the supervision of, the attorney general, who sustains such intimate relations with the court, are sufficient safeguards to prevent reckless and groundless charges from being instituted or prosecuted. We have no statute that requires the preliminary petition or information to be under oath, and while it is better to require an affidavit where a private individual makes complaint, yet where the proceeding is initiated, as here, by the state bar association, and the information is signed by, and the cause is subject to the control of, the attorney general, we think such a preliminary step may be dispensed with.

2. Another objection is that the evidence was heard before a referee, and not by and in the presence of the court. Whatever the rule may be elsewhere, the practice in this court to have the evidence taken and reported by a referee is well established,

3. The transaction respecting the stock certificate was the subject of inquiry in the district court of Arapahoe county in a criminal prosecution wherein respondent was charged with, and by a jury acquitted of, embezzlement of the money in question. The mere fact that defendent was acquitted does not, however, affect the question as to whether he has been guilty of professional misconduct, for which he should be disbarred. *People ex rel. v. Weeber*, 26 Colo. 229; *In the Matter of* —————, *an Attorney*, 86 N. Y. 563. But we shall not further consider this specification, although the greater part of the evidence before us is responsive to that issue, for it is altogether clear to our minds that respondent's misconduct in connection with the divorce proceeding compels us to strike his name from the rolls.

4. It appears that respondent's client was a poor woman, earning her support and that of her two children by daily work. In the spring of 1894 she employed him to procure for her a divorce from her husband, and from time to time during the summer and autumn of that year paid him for his services, as she claims the sum of $40. He himself admits that she paid him the sum of $28. The amount received is not material. No action was instituted in court by respondent, but he says that he was endeavoring to ascertain the whereabouts of the husband and as a result of such inquiry learned that he was in some county in the state of Kansas, and that he prepared and sent the necessary papers to the sheriff of that county to be personally served upon him. The sheriff, however, did not succeed in making service, the papers were not returned, and no further efforts to locate the husband were made. In the month of December the husband was seen by respondent in

Denver, and yet no steps were taken to secure ser-
vice upon him or to begin in court the necessary ac-
tion.  Again for about two months after the time
when respondent admits that he saw the husband,
no court proceedings were instituted, whereupon his
client, becoming dissatisfied and ascertaining such
failure from the court records, procured other coun-
sel who instituted judicial proceedings which resulted
in a decree of divorce in her favor.

After service of process upon the husband had
been made in the action instituted by the counsel
subsequently employed, the respondent says he was
informed of it, and thereupon the summons which
about the same time he had prepared and served on
the husband in an action which he intended to begin,
was recalled, of which he advised the defendant, and
took no further steps in the premises.   His defense
seems to be that he was diligent and faithful towards
his client, and in good faith endeavored to learn the
whereabouts of her husband, but that, the latter not
being a resident of this state, service of process could
not be had upon him, so that suit might be prose-
cuted; and that he did not repay to his client the
money advanced by her for prosecuting the suit be-
cause she became indebted to him in that, or a
greater sum, for other professional services.

As might be supposed, there is a direct conflict of
testimony upon most of the material questions in
issue, but the respondent's testimony upon this hear-
ing is squarely contradicted by his letter to his client
produced in evidence which shows that in the month
of August, 1894, about six months after his employ-
ment, he saw the husband in Denver and had a con-
versation with him in regard to the divorce suit, and
in this letter he clearly implies, and evidently intends

his client to understand, that the action was pending in court and preparations for trial were being made as fast as possible, consistent with her advantage, and in it he told her that he would give her notice when he wanted her witnesses. This testimony is wholly inconsistent with his testimony upon this hearing, and taken in connection with the many other facts testified to by his client, conclusively shows that he was not in good faith representing or protecting her interests, and that he deceived her and improperly retained the money which she had paid him for prosecuting the divorce suit which he never brought, and which money, after repeated demands for the same, he has never returned, as in good conscience and as an honorable man he should have done.

We are compelled, under our sense of duty to the profession and for the protection of the community, hard as it is upon the respondent, to strike his name from the roll of attorneys of this state, and it is so ordered.