---

## IN RE WEED.

(No. 1,744.)

(Submitted March 28, 1902. Decided May 26, 1902.)

26  507|
e28  265|
f28  266|
26  507|
29   12|

*Attorneys—Disbarment—Deceit—Malpractice.*

1. An attorney-at-law who, after having entered into a contract to sell land to a third party, and after having received a part of the purchase price, deeded the land to a mortgagee thereof, the latter having threatened foreclosure, and having no knowledge of the agreement to sell, and who afterwards, notwithstanding that he had thus parted with all title, accepted further payments on the contract from the third party, without informing him of the actual situation, and later falsely representing to him that the title was involved in an estate in another state, but that he would be able soon to convey, was guilty of acts necessarily involving deceit, and, though a criminal prosecution was barred by lapse of time, was liable to disbarment proceedings.

2. An attorney-at-law who, having been employed to collect claims against a corporation, falsely represented to his client's attorney in fact that the corporation was settling on a basis of 50 per cent. only, and that he would retain 10 per cent. as his fee, and obtained authority to settle on such terms, and who, notwithstanding, collected 75 per cent. on one claim and 60 per cent. on another, and turned over to the attorney in fact only 45 per cent. of each claim, and afterwards permitted judgment to go against him by default for the balance, taking no steps to have it set aside, was guilty of malpractice and deceit as an attorney, and liable to disbarment proceedings.

3. In disbarment proceedings, the institution and conclusion of a criminal action against the accused is not always essential as a prerequisite to an investigation by the supreme court of matters constituting a felony.

PROCEEDINGS for the disbarment of Elbert D. Weed, as attorney. Judgment of suspension entered.

*Mr. N. W. McConnell*, for Accused.

*Mr. James Donovan, Attorney General, amicus curiae.*

MR. JUSTICE PIGOTT delivered the opinion of the court.

Disbarment. Original. This is a proceeding for the disbarment of Elbert D. Weed, Esquire, instituted on November 23, 1901. On January 13, 1902, objections to the several accusations were sustained, with leave to amend the petition and attach proper verifications within 20 days. (*In re Weed*, 26 Mont. 241, 67 Pac. 308.) An amended petition was filed on January 23, to which the accused answered by filing objections to the sufficiency of each accusation. His objections to the first four accusations, being without merit, were overruled. The objections to the fifth and last accusation were sustained, and that accusation dismissed. An answer to the merits was filed on February 18, 1902, and on March 27 and 28 the cause was tried by the court.

1. We are not satisfied with the truth of the material allegations constituting the fourth accusation, and therefore dismiss it as not proved. There remain for consideration three accusations.

2. The first accusation charges the accused with the commission of acts necessarily involving deceit (whether the deceit

was an independent crime we do not decide), and also a violation of Section 200 of the Fourth Division of the Compiled Statutes of 1887. Briefly stated, the averments are these: On December 7, 1894, Weed, who then was, ever since has been, and now is, an attorney and counselor of this court, entered into a written contract of sale with one Mayer, whereby, "for and in consideration of $125.00 paid by said Mayer to said Weed, the latter agrees to and with said Mayer to sell and convey eighty (80) acres of land in a square tract off the southwest corner of the southeast quarter (1/4) of section 7, T. 11 N., R. 3 W., at the rate of ten dollars per acre, to be paid as follows: $125.00 down, the receipt whereof is hereby acknowledged; $200.00 on or before January 15, 1895; $175.00 on or before March 1, 1895; $300.00 on or before December 1, '95." This contract was not recorded. Weed was then the owner in fact, as well as by the record, of the land, which lies in Lewis and Clarke county, Montana. On or about April 17, 1895, Mayer paid to Weed $200 as part of the purchase price, which should have been paid on January 15, and the further sum of $175 as the installment which was due on March 1, 1895. Before these payments were made, and on April 2, 1895, Weed, well knowing that he was not, and would not be, able to convey title to Mayer, knowingly, and with intent to defraud Mayer, and feloniously, for a valuable consideration, granted to one Luther F. Smith, by deed of conveyance of that date, the land already sold to Mayer, which deed to Smith was duly recorded on April 15, 1895. At the time of the grant to Smith, Mayer was not residing on the land, nor was there anything to put Smith on notice that any person other than Weed had an interest in it. The deed to Smith invested him with the fee-simple legal title, without any reservation or exception whatever; and thereafter Weed had no interest in the land, nor contract by which he could ever obtain title to it. Weed did not inform Mayer that he intended to grant, or that he had granted, the land to Smith, and did not notify Smith that he had theretofore agreed to sell to Mayer. Because of his implicit confi-

dence in the integrity of Weed, Mayer omitted to examine the records to ascertain the condition of the title. The transfer to Smith was falsely and fraudulently made with intent on Weed's part to defraud Mayer of the land and of the money he had paid upon the contract. Weed knowingly and fraudulently concealed from Mayer the fact of the transfer to Smith, with the deliberately planned purpose and intent to cheat and defraud Mayer and induce him to pay the remainder of the purchase price, and thus to defraud him of all payments which he might thereafter make. Weed was and is utterly insolvent. In August, 1895, Mayer tendered to Weed the remainder of the purchase price, and demanded a deed, but Weed then and afterwards falsely and fraudulently stated to Mayer that he could not at the time comply with the demand, for the reason that the title was involved in an estate in Wisconsin, in which several minor heirs were interested, but expected to make title in a few days. Mayer did not learn of the transfer to Smith until September, 1901, when the daughter and grantee of Smith demanded possession of the land. Since April 2, 1895, Weed has been a stranger to the title. He is unable to convey to Mayer, has had no control over the land, and no means or device whereby he could or can obtain title. The statutes of limitation bar any criminal action against Weed. He refuses to reimburse Mayer or return the money received, but offers a note for $250 in full satisfaction.

By his answer the accused denies that any of the sums paid by Mayer were paid after April 2, 1895; denies every allegation of fraud and deceit; pleads that at the time the contract was made the land was mortgaged to Luther F. Smith, a resident of Wisconsin, which mortgage was of record, and that the accused explained fully to Mayer at the time the fact of the incumbrance, and that Mayer accepted the contract subject to the mortgage; that he at all times expected, and still expects and intends, to discharge the mortgage, and to execute a deed to Mayer conveying a perfect title upon payment of the remainder owing by the latter; that subsequently, and on April

2, 1895, without his fault, and on account only of depreciation in values, and business reversals beyond his control, the accused was unable to pay the amount secured by the mortgage when it became due, which was prior to the 1st day of April, 1895, and Smith, being about to begin a suit to foreclose, the accused, under compulsion of the threatened suit, and only to save the expense thereof, was compelled to give to Smith a deed to the land and other lands covered by the mortgage; that at the time of the execution of the deed there was a full, complete, and binding agreement between Smith and the accused, by the terms of which Smith was to reconvey to the accused upon payment of the amount which might then be due from him to Smith.

At the trial the following facts were either admitted or proved beyond a reasonable doubt to exist: In 1884 the accused made his interest-bearing note to Smith for $4,400. Payment of this note was secured by a mortgage made by the accused of certain lands owned by him, including the 80 acres afterwards contracted for by Mayer. The mortgage was of record. On December 7, 1894, the contract between Weed and Mayer was entered into, and $125 paid down by Mayer. A few months thereafter, on April 2, 1895, Weed conveyed by deed of bargain and sale to Smith the full legal title to all the land mortgaged, the deed being silent as to the contract with Mayer. The negotiations for a settlement were carried on between Smith's counsel at Helena and Weed, and covered a period of several years. These finally resulted in an agreement whereby, in satisfaction and discharge of the mortgage, Smith was to take the property at a valuation of $3,100, and a note of the accused for $3,300,—the debt then amounting to $6,400. The accused was hopelessly insolvent. In the language of Smith's counsel: "The amount was a large amount of money, something over $6,000. It had been running for ten years, and every one was very anxious to have it settled up. You [the accused] and I had numerous meetings and negotiations, covering a long period of time, possibly three or four years; and finally the best we

could do was to have the property appraised, and give you credit for the amount so fixed, and you give a new note for the balance. * * * My recollection is that it was rather a hopeless proposition, and you were obliged to give a note for $3,300 over and above this credit [of $3,100 represented by the land]." Pursuant to this arrangement, the deed of April 2, 1895, was made, and a note for $3,300 given to Smith. The accused never informed Mayer that he intended to convey, or had conveyed, the land to Smith; nor did Smith's counsel or Smith ever hear of the Mayer contract, the accused preserving silence in respect of it. The deed was recorded on April 15, 1895. On the 17th, 18th, or 19th of the same month Mayer paid to the accused personally the installments of the purchase price due in January and March, amounting to $375, and at the same time paid to him $8.60 as interest at the rate of 12 per cent. yearly thereon from the times when these several payments should have been made to April 15. Mayer did not learn of the deed to Smith until September, 1901, when Smith's daughter, who was then and is now the owner of the land, dispossessed Mayer. The latter, deeming himself the owner, had been in possession since April, 1895, and had made permanent and valuable improvements. In August, 1895, and subsequently, on different occasions, Mayer offered to pay to the accused the remainder of the purchase price upon receiving a good title; but the accused falsely stated that because Smith was dead and his estate involved in the Wisconsin courts, or because there were several minor heirs of Smith (the accused testifying to the giving of the former, and other witnesses to the giving of the latter, reason), he was unable immediately to make a deed to the land, though he was willing to receive from Mayer the last installment of the purchase price, assuring Mayer that he "expected to have everything in shape in a few days to make your title good." The accused repeated these false excuses, which Mayer believed, as late as the summer of 1899. At no time prior to February 19, 1902, which was after the amended petition in this proceeding was filed, did he have

any agreement with, or option from, Smith or Smith's successor in interest, under which he had the right or privilege of repurchasing the land. His assertion to the contrary is, according to the only reasonable inferences to be drawn from his own testimony, manifestly an afterthought, and wholly false. He admits that he did not disclose to Mayer the fact of the deed to Smith having been made, and he assigned false reasons why he could not convey title to Mayer. He has never paid, in whole or in part, the money received from Mayer.

In the foregoing statement we have not attempted to detail all the items of evidence which tend to prove the accused guilty of the felony and of the deceit charged in the first accusation. We have contented ourselves with a recitation of some of the most salient conclusions of fact necessarily deducible from the evidence. That he knowingly and fraudulently sold the land to Smith for a valuable consideration after he had executed the agreement for its sale to Mayer was proved beyond a reasonable doubt. That he practiced a deceit upon Mayer in receiving the $383.60, after he had parted with every shred of title to the land, is as clear as any fact, not susceptible of mathematical demonstration, can possibly be. A criminal action under Section 200, *supra,* is barred by lapse of time; but this does not preclude an investigation by the courts into the moral fitness of a counselor at law to remain a member of the most honorable and useful of the learned professions. If the accused could be prosecuted criminally under the provisions of Section 200, *supra,* we should, of course, refuse (in so far as the matters constituted a public offense) to entertain jurisdiction of the first accusation,—which charges a felony, and also gross misconduct, involving moral turpitude, in matters not pertaining to the office of counselor,—until the usual powers of trial courts of criminal cognizance had been invoked. (*In re Wellcome,* 23 Mont. 140, 213, 58 Pac. 45.) In the present case, however, it would be useless to require, as prerequisite to an investigation by this court of the matters constituting a felony, the institution and conclusion of a criminal action by

complaint, information, or indictment, for such an action is barred by the statute of limitations. Nor is a previous conviction essential. (*In re Wellcome*, 23 Mont. 213, and cases cited on pages 225 and 226, 58 Pac. 47; *Boston Bar Association* v. *Greenhood,* 168 Mass. 169, 182, 183, 46 N. E. 568; *Cowley* v. *O'Connell,* 174 Mass. 253, 53 N. E. 1001, 54 N. E. 558; *Delano's Case,* 58 N. H. 5, 42 Am. Rep. 555.)

We find the accused guilty as charged in the first accusation.

3. The second and third accusations may be considered together. By them the accused is charged with malpractice and deceit as an attorney and counselor. In August or September, 1900, one Angell and one Schwendinger employed the accused to examine into the matter of the receivership of a certain mining company against which they held claims. They desired to have the order appointing the receiver vacated, so that their demands might be paid out of the property of the company. The accused investigated the question and was paid for the advice he gave. The claims were left in his hands for collection. In December, 1900, he prepared and caused to be filed, in behalf of his clients, notices of laborers' liens based upon these claims. In April, 1901, at the request of Angell and Schwendinger, he drafted powers of attorney appointing one Davis their attorney in fact to collect the demands. In August, 1901, learning that the company was settling the claims against it, he went to Davis and falsely informed him that the company was settling the claims on the basis of 50 per cent. only, that it would not pay more, and that of such amounts he (the accused) would retain 10 per cent. as his fee or commission. Davis authorized him to settle on the terms suggested. Thereupon the accused collected 75 per cent. of the Angell claim and 66 per cent. of the Schwendinger claim. He turned over to Davis 45 per cent. of the face value of each demand, and kept the remainder. Davis and his principals afterwards discovered that the company had paid the accused a greater proportion of the demands. Subsequently Angell sued the accused to recover the difference between the amount received by him

and the amount accounted for. The accused was personally served with summons, made default, and suffered judgment to go against him. The judgment has not been paid. He testified that he fully intended to defend the action and interpose a counterclaim for professional services, but had occasion to leave Helena, where the action was pending, and while absent for a few days judgment was taken. He offers no reason why he omitted to move the vacation or setting aside of the judgment. This is but one of the items of evidence tending to prove the charges.

The accused is found guilty of the malconduct alleged in the second and third accusations.

The acts constituting the crime, and the substantive deceit alleged in the first accusation, were committed seven years ago, although the affirmative deception serving to characterize them was continued until 1899, or even later. The malconduct charged in the second and third accusations may possibly have been the result of a mistaken idea of the accused that his professional duty in respect of the demands had ceased, and that he, as broker, was dealing at arms' length with the agent of his former clients, and was under no obligation to disclose frankly and fully his knowledge concerning the demands, which he had obtained in virtue of his fiduciary relation. If he entertained such an idea or belief, it was unsupported by the facts and was without foundation in law or ethics. In view of these considerations, and of the evidence establishing his good reputation for trustworthiness and honesty, we deem it merciful and at the same time just, to impose a penalty less severe than permanent disbarment. The judgment of the court is that the accused, Elbert D. Weed, be, and he is hereby, suspended from his office of attorney and conselor, and deprived of the right to practice as such in the courts of Montana, for the period of two years, to-wit, until the 26th day of May, 1904; at the expiration of which time he may, upon proper petition, supported by satisfactory evidence of good conduct meantime, be restored to his privileges. Let the judgment be entered.

MR. CHIEF JUSTICE BRANTLY: I concur.

MR. JUSTICE MILBURN: I concur in the result as reached by my associates as to the charge made against Mr. Weed connected with the matter of the sale of real estate to Mr. Mayer. I am much impressed with the force of MR. JUSTICE PIGOTT'S views and of the decisions and opinions of the other courts which support the position taken by the majority of this court. But I am not convinced that this court may, in this proceeding, find the respondent guilty of a felony without at least an attempt to prosecute him before a court competent to render a judgment of conviction. To find a lawyer guilty of an act involving moral turpitude, the act being felonious, and to mark him as a felon without an attempt at a trial, is not, in my opinion, embraced within the power conferred upon this court by Subdivision 5 of Section 402 of the Code of Civil Procedure. The adjudicated cases of this state have not gone to that extent, as I think. I am not fully satisfied that the said subdivision was intended to confer upon this court the power to adjudge a man guilty of a felony without at least an attempted trial in a competent trial court.

But it is not necessary for me, in arriving at a determination as to my duty in this case, to agree with the courts that have held views opposed to mine. A careful examination of the record shows that Mr. Weed failed to act with the good faith which should characterize a trustworthy attorney and a member of this bar in relation to the matter of the sale of the said land after he had received the last money which was paid to him by Mr. Mayer. Assuming that the respondent's intentions, although sadly mistaken, were honest at the time that he made the contract to sell the land, and all along up to and including the time when he received the last payment of money thereon, one cannot in any wise excuse his behavior toward Mr. Mayer since the date of the last payment. His conduct was one of deception. If he became embarrassed because of the depreciation of the value of real estate and of financial distress, he had

a plain and evident duty, to-wit, to disclose to his unfortunate vendee the true circumstances of the case.    His failure to acquaint Mr. Mayer with the truth, and his evident purpose to keep him in darkness as to the facts, disclose to me such a want of the true conception of a fair-minded man's duty to one dependent upon him for the truth, that I cannot avoid the conclusion that the charge as made against him in respect of this matter, so far as it charges him with a want of good faith, is sustained; and for this reason, and for this reason alone, without any finding as to his intent at the time he contracted to sell the property or received the money, I concur in the result as reached by the majority of this court.

I concur in the opinion of the court as to the findings, reasons, and conclusion in respect of the other charges upon which the respondent has been found guilty.