*In the Matter of the Disbarment of* J. A. SMITH.
No. 14,864.    (85 Pac. 584.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Change of Venue—Prejudice of the Judge.* An apprehension of a party that a judge is prejudiced against him is not enough to require a change of venue, but it must satisfactorily appear that prejudice in fact exists.

2. ATTORNEYS—*Disbarment—Statutory Grounds Not Exclusive.* The enumeration in the statute of certain acts which will be deemed sufficient for the revocation or suspension of an attorney's license to practice law does not limit the common-law power of the court in that respect, and attorneys may be disbarred for other than the statutory grounds.

3. ——— *Gross Misconduct a Ground for Disbarment.* An attorney may be disbarred not only for malpractice and dishonesty in his profession, but also for gross misconduct showing him to be unworthy of the privileges which the law con-

fers on him and unfit to be entrusted with the duties and powers of an attorney.

4. ――― *Proof of Conviction of Crime Not Essential.* Where the charges made against an attorney involve moral turpitude, proof of a conviction is not essential to a disbarment.

5. ――― *Statute of Limitations Not a Defense.* In a proceeding for the disbarment of an attorney the statute of limitations is no defense.

6. ――― *Procedure—Court itself Must Try Facts.* In such a case the court itself is the trier of both facts and law, and these functions cannot be delegated to a committee, commissioner, or referee.

7. ――― *Accusation—Form and Requisite.* The formal and technical requirements of criminal pleading are not required in an accusation, but it is necessary that the charge against an attorney shall be so specific as fairly to inform him of the precise nature of the misconduct of which he is accused. If the facts of the charged misconduct are clearly brought to his attention, the form in which they are stated or whether some of them are repeated in several paragraphs is not vital.

8. ――― *Sufficiency of Evidence.* The testimony of moral and professional delinquency of the accused is held to meet the requirement that more than a mere preponderance of the evidence is necessary in such cases, and is sufficient to support the judgment of disbarment.

Appeal from Wyandotte district court; J. McCabe Moore, judge. Opinion filed May 12, 1906. Affirmed.

*J. A. Smith, pro se.*

*Samuel Maher, John A. Hale,* and *Thomas J. White,* prosecuting committee.

The opinion of the court was delivered by

Johnston, C. J.: This was a proceeding brought in the district court of Wyandotte county for the disbarment of J. A. Smith, a practicing attorney in the courts of Kansas. Upon a complaint made that Smith had been guilty of malpractice, and other misconduct, the court appointed a committee of the bar to make a preliminary investigation of the charges and to report whether further action upon the complaint should be taken.

This committee, after an extended inquiry, recommended that an accusation be filed against Smith. The court accordingly appointed another committee of lawyers to prepare and file an accusation against him, and one containing three paragraphs was drawn and filed.

In the first paragraph it was alleged that Smith was a material witness in a case pending in the district court of Lyon county, as to whether a certain deed purporting to convey the land in controversy was genuine or a forgery; that he was visited by J. W. Blank, who offered to give Smith $200 if he would testify falsely in the case, or would absent himself so that his deposition could not be taken or service of a subpœna be made upon him; that Smith accepted the offer, and agreed with Blank either to give the false testimony or to absent himself so that his evidence could not be had; that Blank paid Smith ten dollars of the stipulated amount, and to secure payment of the remainder gave Smith a diamond of the value of $175; that later Blank brought an action of replevin for the recovery of the diamond against Smith in the district court of Wyandotte county, in which Smith stated and made the defense that the diamond was given to him for the immoral and illegal purpose mentioned in the offer; that the trial resulted in a verdict and judgment against Smith, whereupon he instituted a proceeding in error in the supreme court to reverse the judgment, and to that end argued there that because the diamond had been given to him for the aforementioned immoral and illegal purpose there should be a reversal of the judgment, but that upon his own statement and argument the supreme court denied any relief and dismissed the proceeding upon the grounds stated in the decision. (69 Kan. 853, 76 Pac. 858.)

In the second paragraph it was alleged that Smith came into possession of the diamond mentioned in the first paragraph, but that the exact manner in which he gained possession of it was not known to the com-

mittee; that upon a demand for its return to the owner Smith refused to surrender it, setting up that it was obtained for the illegal purpose mentioned in the first paragraph. The details of the transaction, the bringing of the replevin action, and the attempted review of the judgment rendered in that action, together with the defenses, statements and arguments made by Smith in those proceedings, were alleged in substantially the language employed in the first paragraph, closing with the averment that notwithstanding the final judgment for the return of the diamond to its owner Smith still refused to give it up.

In the third paragraph it was averred that Smith brought an action in behalf of a client to recover an indebtedness for labor, and, after having been informed by both of the parties to the transaction that the debt had been paid and the controversy settled, he continued the litigation, introduced false testimony and made false statements, in the absence of the defendant, by which the justice of the peace before whom the case was tried was deceived, and was induced to enter a judgment against the defendant for ten dollars, when Smith well knew that the debt had been fully paid and satisfied.

After several motions directed at the accusation, and a motion for a change of venue, had been made and denied, the accused answered, denying the charges made against him, pleading in bar the statutes of limitation, and also a former adjudication of the charge as to the diamond, and setting forth his version of the transactions upon which the charges in the accusation were based. Much testimony was offered, upon which the court found that the charges were sustained, and entered a judgment revoking the license of the accused as an attorney and counselor at law, barring him from practicing his profession in the courts of the state, and striking his name from the roll of attorneys.

The first question raised on this appeal is, Was there

error in refusing the accused's application for a change of venue? In an affidavit Smith stated that he believed the district judge entertained a feeling of ill will and prejudice toward him, citing rulings in a number of cases as indicating such a state of mind; that his apprehensions of prejudice were shared by his clients, and on that account he had been bringing most of his cases in the court of common pleas of Wyandotte county. The accused also stated in his affidavit that he acquitted the judge of any intentional misconduct or desire to wrong him, and that although the judge seemed not to be conscious of any prejudice toward him he believed the judge's state of mind was such that he could not give the accused a fair trial. Eliminating mere conclusions, and looking to the facts stated in the affidavit, it is clear that a change of venue would not have been justified. It frequently has been held that the venue should never be changed upon this ground unless the evidence clearly establishes the prejudice of the judge. The most that can be said of the showing in support of the application in this case is that it indicates a strong belief on the part of the accused that a prejudice existed against him in the mind of the judge. It is not enough that a party apprehends or believes that a judge is prejudiced, but it must satisfactorily appear that prejudice in fact exists. If mere fear of prejudice in a judge would warrant a change of venue the applications therefor would be numerous. The rule established by the statute and the decisions relating to changes of venue on account of the prejudice of the judge makes it clear that no error was committed in denying the accused's application. (*City of Emporia v. Volmer,* 12 Kan. 622; *The State v. Bohan,* 19 Kan. 28, 50; *Protective Union v. Gardner,* 41 Kan. 397, 401, 21 Pac. 233; *The State v. Grinstead,* 62 Kan. 593, 608, 64 Pac. 49; *The State v. Stark,* 63 Kan. 529, 66 Pac. 243, 54 L. R. A. 910, 88 Am. St. Rep. 251; *The State v. Parmenter,* 70 Kan. 513, 79 Pac. 123.)

It is next contended that some of the charges against
Smith do not fall within the causes for disbarment
named in the statute.  As will be observed, the stat-
ute does not provide that the only causes for which the
license of an attorney may be revoked or suspended are
those specified in it, nor does it undertake to limit the
common-law power of the courts to protect themselves
and the public by excluding those who are unfit to as-
sist in the administration of the law.  It merely pro-
vides that certain causes shall be deemed sufficient
for the revocation or suspension of an attorney's li-
cense.  (Gen. Stat. 1901, § 398.)  In the early case
of *Peyton's Appeal,* 12 Kan. 398, 404, it was held that
this statute is not an enabling act, but that the power
of the court to exclude unfit and unworthy members of
the profession is inherent; that "it is a necessary inci-
dent to the proper administration of justice; that it
may be exercised without any special statutory au-
thority, and in all proper cases, unless positively pro-
hibited by statute; and that it may be exercised in any
manner that will give the party to be disbarred a fair
trial and a full opportunity to be heard."  If there is
authority in the legislature to restrict the discretion
of the courts as to what shall constitute causes for
disbarment, or to limit the inherent power which they
have exercised from time immemorial, it should not
be deemed to have done so unless its purpose is clearly
expressed.  It is generally held that the enumeration
of the grounds for disbarment in the statute is not to
be taken as a limitation on the general power of the
court, but that attorneys may be removed for common-
law causes when the exercise of the privileges and
functions of their high office is inimical to the due ad-
ministration of justice.  (*Farlin v. Sook,* 30 Kan. 401,
1 Pac. 123, 46 Am. Rep. 100; *In re Norris,* 60 Kan.
649, 659, 57 Pac. 528; *Boston Bar Association v.
Greenhood,* 168 Mass. 169, 46 N. E. 568; *In the Matter
of Mills, an Attorney,* 1 Mich. 392; *The State, ex rel.,*

*In re* Smith.

*v. Laughlin,* 10 Mo. App. 1, 31 S. W. 889; *State, ex rel., v. Harber et al.,* 129 Mo. 271, 31 S. W. 889; *State, ex rel., v. Gebhardt,* 87 Mo. App. 542; *In re Boone,* 83 Fed. 944; 4 Cyc. 905, 906.)

The nature of the office, the trust relation which exists between attorney and client, as well as between court and attorney, and the statutory rule prescribing the qualifications of attorneys, uniformly require that an attorney shall be a person of good moral character. If that qualification is a condition precedent to a license or privilege to enter upon the practice of the law, it would seem to be equally essential during the continuance of the practice and the exercise of the privilege. So it is held that an attorney will be removed not only for malpractice and dishonesty in his profession, but also for gross misconduct not connected with his professional duties which shows him to be unfit for the office and unworthy of the privileges which his license and the law confer upon him. (*Ex parte Wall,* 107 U. S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552; *Ex parte Burr,* 4 Fed. Cas. [No. 2186] 791, 1 Wheel. Crim. Cas. [N. Y.] 503; *In re O———,* 73 Wis. 602, 42 N. W. 221; *Delano's Case,* 58 N. H. 5, 42 Am. Rep. 555; *O'Connell, Petitioner,* 174 Mass. 253, 53 N. E. 1001, 54 N. E. 558; *Darmenon's Case,* 1 Mart. [La.] 129; *In re John Percy,* 36 N. Y. 651; *Penobscot Bar v. Kimball,* 64 Me. 140; *In re Wellcome,* 23 Mont. 450, 59 Pac. 445; *In re Weed,* 26 Mont. 507, 68 Pac. 1115; *Cohen v. Wright,* 22 Cal. 293; *State v. McClaugherty,* 33 W. Va. 250, 10 S. E. 407; *Jones's Case,* 2 Pa. Dist. Ct. 538; *State, ex rel., v. Byrkett,* 4 Ohio Dec. 89; 4 Cyc. 910; 3 A. & E. Encycl. of L. 302.)

The accused was charged with professional misconduct, and also with misconduct not directly connected with his professional duties; but all of the charges related to the administration of justice, and seriously affected his professional and personal integrity. Although the charges involve moral turpitude, it is not

necessary to a disbarment that there should have been a conviction. (*Ex parte Wall,* 107 U.S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552; *State, ex rel. Hartman, v. Cadwell,* 16 Mont. 119, 40 Pac. 176; *The State, ex rel. McCormick, v. Winton,* 11 Ore. 456, 5 Pac. 337, 50 Am. Rep. 486; *Perry v. The State,* 3 G. Greene [Iowa], 550; *Watson v. Citizens' Savings Bank,* 5 S. C. 159; *In re Samuel Davies,* 93 Pa. St. 116, 39 Am. Rep. 729; *Gates's Case,* 1 Pa. Co. Ct. 236.) Even an acquittal upon a criminal charge does not prevent the disbarment of an attorney, where it clearly appears that the misconduct under investigation rendered him unfit to be entrusted with the powers and duties of his profession. (*The People v. Mead,* 29 Colo. 344, 68 Pac. 241.)

It is contended that the proceeding was barred by some statute of limitation, but the accused points out no particular limitation applicable to cases of this character. Staleness in a charge against an attorney might prevent its being considered, because an unreasonable delay in the presentation of a charge of misconduct might make it impossible for an attorney to procure the witnesses or the testimony which would have been available at an earlier time to meet such charge; but the statute of limitations itself is no defense to such a proceeding. (*In re Elliott, ante,* p. 151; *In re Lowenthal,* 78 Cal. 427, 21 Pac. 7; *Ex parte Tyler,* 107 Cal. 78, 40 Pac. 33; *In re Weed,* 26 Mont. 507, 68 Pac. 1115; *United States v. Parks,* 93 Fed. 414; 4 Cyc. 914, 915.) It cannot be said that the charges in the present case have become stale, nor that there has been an unreasonable delay in presenting them to the court.

The accused urges as a defense that a former inquiry as to his professional standing and conduct bars the maintenance of this proceeding. In 1901 complaint as to his misconduct was made to the court, and, among other things, the diamond transaction was mentioned. The court appointed a committee to investigate the charges, and report the results, with recommendations.

*In re* Smith. ·

The committee made an extended inquiry, reported that the charges presented were not true, and their report, which was not preserved, was approved by the court, and it was ordered that the petition for disbarment be denied.   The argument is that as the misconduct in respect to the diamond was included in the complaint, brought to the attention of the committee, and the committee's report was acted upon by the court, it is not open to further consideration.   The action taken in that preliminary investigation by the committee, although approved by the court, was in no sense an adjudication.   In the first place it appears that the diamond transaction was not in fact investigated. At that time it was the subject of inquiry in the replevin action heretofore mentioned, and hence the committee concluded to leave it out of consideration. Again, the investigation appears to have been preliminary, and only for the purpose of determining whether a formal accusation should be filed and the appellant cited to appear and make answer to the charges of misconduct.   Like action was taken in the present case, for it appears that the accusation was not filed until a committee of the Wyandotte county bar had inquired into the charges and recommended that further proceedings be taken.   This is not an uncommon practice, especially where the court is not satisfied that the charges made are well founded, or where it has not sufficient time to make the necessary inquiry in order to determine whether the attorney should be cited before the court to answer and defend.

There is a further reason why the action taken cannot be considered as a binding adjudication.   Charges of this character cannot be tried by a committee, nor can the functions of the court in this respect be delegated to any one else.   The statute is specific, and expressly places this responsibility upon the court itself. It provides: "To the accusation he may plead or demur, and the issues joined thereon *shall in all cases be tried by the court,* all the evidence being reduced to

writing, filed and preserved." (Gen. Stat. 1901, § 401.) It was the evident legislative purpose that in cases in which the honor and dignity of the court are involved, and which so seriously affect one of its attorneys, the court itself should be the trier of both the facts and the law. In Colorado it is held that the testimony in such a case may be reported by a referee (*The People v. Mead,* 29 Colo. 344, 68 Pac. 241), but in a number of states it is ruled that not only should the judge make the findings of fact and law, but, also, that the witnesses should be examined in the presence of the court. (*The State of Florida, ex rel., v. Jesse J. Finley,* 30 Fla. 325, 11 South. 674, 18 L. R. A. 401; *In the Matter of Albert L. Chandler,* 105 Mich. 235, 63 N. W. 69; *In the Matter of an Attorney,* 83 N. Y. 164, 23 Alb. L. J. 129; *In the Matter of ———, an Attorney,* 86 N. Y. 563.) In the investigation of the accused in 1901 there was certainly no trial by the court, and hence no adjudication. The testimony in the record makes it clear that such inquiry as the committee made was only preliminary, that the transactions involved here were not in fact considered by the committee, and that there has never been a previous trial by the court of the charges now under consideration.

There is complaint of inconsistency in the charges contained in the accusation, and a contention that the prosecuting committee should have been required to elect whether it would stand upon the first or second count. Both of these counts related to the conduct of the accused in respect to the diamond. In the first it was charged that money and a diamond were given to, and accepted by, the accused as a bribe to assist in defeating the ends of justice, and that when the question of possession and ownership of the diamond was presented to the court he pleaded his own immoral and illegal acts to defeat a recovery. In the second count it was alleged that the committee was unable to state the exact manner in which the accused gained possession of the diamond, but that he unlawfully refused to

*In re* Smith.

give it up, and when proceedings were brought for its recovery he set up that the money was paid and the diamond delivered for the immoral purpose related in the first count. It is manifest that the complaint was framed to meet the exigencies of the proof. The proceeding is not criminal, and the formal and technical requirements of criminal pleading are not necessary in an accusation. (*In re Burnette, ante,* p. 609.) In criminal cases, however, the pleader is permitted to charge the same offense in several counts, in order to meet the requirements of the evidence. While formal and technical pleading is not essential to this proceeding, it is important that the charges against an attorney shall be so specific as fairly to inform him of the precise nature of the misconduct with which he is accused. If the facts of the charged misconduct are clearly brought to his attention, the form in which they are stated or whether they are stated in one or two paragraphs is not of great importance. In any event the penalty can be no more than disbarment. So, in this case, the accused was notified that the committee would endeavor to prove that the money and property were offered to, and accepted by, him on the condition that he would either testify falsely or would assist in defeating justice by absenting himself so his testimony could not be had, and, if they failed in establishing that, that they would attempt to show that however he may have acquired the possession of the diamond he had at least stated and pleaded that it was given to him for the immoral and illegal purpose stated. The accused could not have been misled as to the nature of the misconduct charged against him, and we think no error was committed by the court in refusing either to quash the charges or to require an election by the committee.

Little need be said as to the sufficiency of the proof upon which the judgment of disbarment rests. Although the proceeding is not criminal, it is of such a nature, and the judgment of disbarment is so severe

48—73 KAN.

and so direful in its results to an attorney, that something more than a mere preponderance of proof is necessary. A judgment deprives an attorney of an office, of a means of livelihood, and to a great extent of his good name, and should only be rendered upon clear and satisfactory legal proof. The evidence in the record appears to be sufficient to meet the strictest requirement in this respect. Indeed, the accused, in statements, pleadings and arguments seriously made in courts, seems to have admitted much of the misconduct alleged against him. His recital of the negotiations for the giving of false testimony by him in court, or for the evasion of a subpœna so that his testimony as to the real facts in the case could not be obtained, betrays a moral obliquity and an utter lack of appreciation of the dishonesty of his acts. The explanation that he took money and property tendered as the price of his dishonor, expecting later to make an exposure of the man who bought him, if it had been believed by the trial court, does not go far toward exculpation. Instead of resenting the corrupt offer, the money was accepted and the diamond securing a further payment was received and kept, and when the owner of the diamond brought replevin for the recovery of his property the accused set up the immorality of the transaction and his own shame to defeat the action. The testimony showing both moral and professional delinquency was such that the duty of the trial court was clear, and no other course was open than the revocation of the abused license. An attorney is admitted upon a satisfactory showing of his good character and fitness to be an officer of the court. He is afterward required to maintain the same ethical standard, and is only entitled to hold the high office of "minister of the law" during good behavior. The proofs of misbehavior and of moral and professional delinquency are so clear that there appears to be no escape from the unpleasant duty of affirming the judgment of disbarment.

All the Justices concurring.