*In re* the Disbarment of E. C. WILCOX.

No. 17,799.

SYLLABUS BY THE COURT.

1. ATTORNEY AT LAW—*Disbarment—Accusation Sustained.* The evidence in original proceedings for disbarment examined and held insufficient to sustain certain of the charges in the accusation, but sufficient to sustain two charges of misconduct, one of which it is held relates to the administration of justice and seriously affects the professional and personal integrity of the accused.

2. —— *Criminal Libel—Purpose—To Defeat the Administration of Justice.* While an original proceeding brought in this court to disbar an attorney was pending and undetermined an information was filed against the attorney in a district court charging him with criminal libel. On a trial of the criminal action he was acquitted. Thereafter a supplemental accusation was filed in this court, setting up as an additional ground for his disbarment that he was guilty of the criminal libel of which he had been acquitted and that the object and purpose of the libel was to induce the libelee to use his influence to have the disbarment proceedings dismissed. The court finds that the evidence sustains the supplemental accusation, that the purpose of the libel was to defeat the administration of justice, and that the charge seriously affects the professional and personal integrity of the accused, for which reasons judgment of disbarment is ordered.

Original proceeding in disbarment. Opinion filed June 7, 1913. Attorney's license revoked.

*Samuel Griffin, J. N. Tincher,* and *Seward I. Field,* all of Medicine Lodge, for the accuser.

*Chester I. Long, R. R. Vermilion, Joseph G. Carey, Earle W. Evans,* all of Wichita, and *John Marshall,* of Topeka, for the accused.

The opinion of the court was delivered by

PORTER, J.: This is an original proceeding brought to disbar E. C. Wilcox. The first accusation was filed August 17, 1911. It was signed by T. W. Blake as

accuser. A motion to make more definite resulted in the filing, on January 3, 1912, of a verified accusation consisting of six distinct charges of misconduct. After the accused had answered with a denial of the charges, a supplemental accusation was filed June 11, 1912, setting forth as an additional ground for disbarment that the accused was guilty of criminal libel, as charged against him in the case of *The State v. Wilcox,* ante, p. 80. He filed his denial of this charge.

The commissioner appointed to take the evidence, find the facts and recommend such final judgment as he deemed proper, has made a very full report, in which he has found in favor of the accused on three of the charges, against him on four, and has recommended that judgment of disbarment be entered. The parties have each filed exceptions to the findings both of fact and of law. Able counsel have submitted elaborate arguments, orally and in briefs, upon the questions raised by the exceptions and upon the motion of the accuser for judgment of disbarment upon the findings.

E. C. Wilcox, the accused, has resided at Anthony, in Harper county, since 1888. He was born in Ohio in 1870, and was admitted to the bar of this state in 1890. He was elected county attorney of Harper county in 1910 and was holding that office when this proceeding was begun. He is a lawyer of ability, and by diligence and attention to the business of his clients he has built up a successful and lucrative practice in the courts of this and adjoining states. He has frequently appeared for his clients in the supreme court, and at this time has a number of cases pending here. It is to his credit as a lawyer that no charge or accusation of any kind has been brought against him or testified to in this proceeding by a former client. It is perhaps significant that the commissioner has acquitted him upon the only charge which the accuser has sworn to otherwise than upon information and belief.

*In re* Wilcox.

Both parties have excepted to the findings and conclusions as to charge No. 1, involving alleged unprofessional conduct in the Cullison divorce case. The commissioner finds that the explanation of the accused is a fair and reasonable one with respect to the circumstances in connection with the bringing of the first action for divorce, and also finds in his favor respecting his conduct in filing the second action. We have examined the evidence and approve these findings. The commissioner finds against the accused as to part of the charge. It appears that after the second action was brought the husband of Katherine Cullison paid her $200, whereupon, without consulting her attorney, the accused, she dismissed her action and returned to Arkansas, where she formerly resided. She was an ignorant, uneducated woman, and the second wife of Cullison, who owned property worth about $7000. Shortly after her return to Arkansas the husband died. The accused wrote letters informing her that she had an interest in the property, and offering to assist her in securing it and in protecting her rights. Receiving no reply, he sent his stenographer to Arkansas with $2000, with directions to obtain a power of attorney from her authorizing him to represent her interests in the estate, and failing in this, to purchase her interest at a sum not in excess of $2000.

When the stenographer reached Arkansas it was found that the Cullison children by the first wife had already procured a conveyance of Katherine's interest in the estate for the sum of $500. The accused thereafter brought suit against her for $350 attorney's fees in the divorce case and levied an attachment upon her interest in the lands of her deceased husband. The action was afterwards dismissed upon the payment to accused of $100. The commissioner finds that there was nothing unfair in the children of D. Cullison purchasing the interest of Katherine Cullison for the sum

of $500, because she had not assisted in acquiring the property; but finds the accused guilty of unprofessional conduct in attempting while acting as her attorney to purchase the same interest for $2000. The commissioner also finds him guilty of reprehensible conduct in bringing suit for $350, because he was aware that he was not entitled to any such fee for the services performed and because, in the opinion of the commissioner, the suit for fees was the result of failure to purchase the interest of the client.

In our opinion the conclusions are not supported by the facts found. In the first place, it does not appear that the accused was acting as attorney for Katherine Cullison at the time he offered to purchase her interest. An offer of $2000 cash for property estimated to be worth from $3000 to $3500, the purchase of which involved possible litigation and time necessary before it could be realized upon, does not seem under the circumstances to be reprehensible. Before the offer was made the accused had twice written Mrs. Cullison, informing her of her interest in the estate, and there is no suggestion that she was not acquainted with its value. No reason is suggested why he might not offer to purchase her interest, if in fact he was not her attorney; and the only possible construction we can give to the evidence and the other findings is that the offer to purchase was not to be made at all unless she refused to retain him to represent her interests in the estate.

In regard to the suit to collect a fee for his services as an attorney in the divorce case, which she had settled and compromised without consulting him, involving, as it seems, a claim for a share in the property of the husband, we can not say that the amount was so excessive as to warrant a finding of unprofessional conduct. Nor do we think it necessarily follows that an attorney is guilty of reprehensible conduct because, in a suit upon *quantum meruit* against a client to recover attorney's

*In re* Wilcox.

fees for services rendered, where there is no agree-
ment or understanding fixing the amount, he asks judg-
ment for more than he is willing to settle for, or for a
larger sum than the proof may show him to be entitled
to recover.  The circumstances might be such as to ren-
der such conduct discreditable and even reprehensible;
but nothing appears in the evidence to justify the find-
ing made.  The clear inference from the evidence is
that the accused was entitled to a fee for his services,
which the former client refused to pay.  He had a
right, therefore, to sue the client and to attach her
property, and the exercise of this right should not be
regarded as reprehensible or ground for disbarment.
We find nothing in the evidence to justify the finding
that the action was brought for any purpose other than
to recover an attorney's fee.  It perhaps would not
have been brought in the event the accused had suc-
ceeded in purchasing the property, but having a legiti-
mate cause of action, his failure to purchase the prop-
erty neither deprived him of the right to sue nor can
it be said to render his conduct in bringing suit worthy
of reprehension.

Therefore, upon charge No. 1, involving his conduct
in the Cullison case, we find in favor of the accused.

Charge No. 2 is that in 1906 the accused, while read-
ing to the court a deposition in a divorce case, willfully
interpolated certain words which tended to render the
evidence of the deposing witness "even more revolting
than it was."  The deposition in question was read in a
case in which the accused appeared for the wife.  The
deposing witness purported to state verbatim certain
expressions said to have been addressed to the wife by
the husband.  The deposition seems to have literally
overflowed with foul and obscene expressions.  The
commissioner finds that the accused in reading to the
court willfully interpolated two words.  The testimony
given before the commissioner by the trial judge and

the opposing counsel is that the interpolations were made. The accused denies the charge and his client, who was present at the divorce trial, testified that she was familiar with the contents of the deposition, and that no interpolation was made. It is significant that there is no evidence that the attention of the accused was called to the circumstance at the time it is said to have occurred or at any other time until this accusation was filed. The opposing counsel, it seems, informed the court of the matter privately before the case was decided; but the failure to challenge attention to the circumstance in open court at the time would indicate that it was not regarded as of much importance. We are unable to discover how the words interpolated could materially affect the testimony of the witness or make the expressions testified to more revolting than they actually were. It is our experience that interpolations in the reading of legal documents by attorneys in this court, due wholly to carelessness, occur very frequently where the real meaning is affected far more seriously than it could possibly have been in this instance, and where the interpolations are made unconsciously and with no purpose to mislead. We are not inclined to attach importance to this charge, and in view of the lapse of time that has occurred, and the circumstances to which we have referred, we must disapprove of the commissioner's finding, and upon charge No. 2 we find in favor of the accused.

On charges Nos. 3 and 4 the findings are in favor of the accused. The exceptions taken by the accuser are overruled and the findings are approved.

Charge No. 5 the commissioner finds was not sustained in any particular and we approve the finding.

The commissioner separates his findings under charge No. 6 into seven subdivisions, on five of which he finds in favor of the accused, and the findings are approved. For the most part they appear to amount

*In re* Wilcox.

to nothing more than that accused indulged freely in criticism of the courts, and of the action of the county board and that of the city council upon public matters. If the charges in these respects are true, they furnish no grounds for disbarment or of a charge of unprofessional conduct.

The evidence as to subdivisions 1 and 2 of charge No. 6 appears to justify the findings of the commissioner against the accused as to the facts, and to that extent the findings are approved. These charges are that the accused on different occasions uttered slanderous words against certain persons. The fact that one of the persons against whom the slanderous charges were made occupied at the time a judicial position does not affect the matter. The conduct of the accused was discreditable and reprehensible as a citizen, aside from any obligations resting upon him as a member of the bar.

If the foregoing comprised all the charges against the accused, and the only one sustained by the evidence was the charge of having uttered a slander, the court in all likelihood would not feel justified in imposing a sentence so severe as a judgment of disbarment. But unfortunately there remains the more serious charge set forth in the supplemental accusation that the accused is guilty of criminal libel. By consent of the parties all the evidence taken in the district court of Shawnee county in the criminal action of *The State v. E. C. Wilcox, H. C. Ericsson and Cory Black* was admitted as evidence in this proceeding. Upon the trial of the criminal action Wilcox, though present, did not testify. The jury acquitted him and returned a verdict of guilty against Ericsson and Black. The judgment has just been affirmed. (*The State v. Wilcox*, ante, p. 80.) The accused was a witness in the disbarment proceedings, and we have carefully considered his evidence, in which he denies all knowledge of any conspiracy or plan to bring a false charge against the

libelee in that case, and denies that he had any knowledge of the fact that his friend, Cory Black, had employed a detective for any purpose or of the fact of the writing by Black of the letter to the libelee until May 4, 1912. From all the evidence we are unable to come to any other conclusion than that reached by the commissioner, and we therefore approve his finding that the accused is guilty of the charge set forth in the supplemental accusation, which in substance is the same charge for which he was tried in the criminal action and acquitted. The evidence, aside from that of the accused here, being the same in both cases, it is not deemed necessary to refer to it again in detail.

On the questions of law raised by the accused, it is first contended that his acquittal in the criminal action should be considered as an end to the charge. The rules of evidence in the two cases are not the same. The accused, as a defendant in the criminal action, could not be convicted except upon evidence which satisfied the jury of his guilt beyond a reasonable doubt. While a preponderance of evidence is sufficient in this proceeding, we do not in any sense rest our finding upon that rule of evidence. The acquittal in the criminal action, while properly a subject to be given due consideration, is not conclusive. Counsel for the accused say in the briefs:

"After a careful review of all the authorities, we have been unable to find a single case where an attorney has been disbarred for an indictable offense not committed in his character as an attorney, except where some unusual circumstances existed, or where the evidence was undisputed."

In the opinion in the case of *In re Smith,* 73 Kan. 743, 85 Pac. 584, this court, while commenting upon the various grounds upon which courts have disbarred attorneys for conduct involving moral turpitude, used this language:

"Even an acquittal upon a criminal charge does not

*In re* Wilcox.

prevent the disbarment of an attorney, where it clearly appears that the misconduct under investigation rendered him unfit to be entrusted with the powers and duties of his profession." (p. 750, citing with approval the case of *The People v. Mead,* 29 Colo. 344, 68 Pac. 241.)

The same case (*In re Smith,* supra) may be cited in answer to the contention that the crime charged against the accused was not connected with his professional duties. In the opinion Chief Justice Johnston said:

"The nature of the office, the trust relation which exists between attorney and client, as well as between court and attorney, and the statutory rule prescribing the qualifications of attorneys, uniformly require that an attorney shall be a person of good moral character. If that qualification is a condition precedent to a license or privilege to enter upon the practice of the law, it would seem to be equally essential during the continuance of the practice and the exercise of the privilege. So it is held that an attorney will be removed, not only for malpractice and dishonesty in his profession, but also for gross misconduct not connected with his professional duties which shows him to be unfit for the office and unworthy of the privileges which his license and the law confer upon him." (p. 749.)

Moreover, the sole purpose of the libel and the unlawful conspiracy in which the accused is found to have participated was to defeat the administration of justice by bringing a false and unjust charge against an innocent person, in order that he might be induced to use his influence to have this disbarment proceeding abandoned. In the Smith case, *supra,* the accused was disbarred because of misconduct not directly connected with his professional duties; but it was stated in the opinion that "all of the charges related to the administration of justice, and seriously affected his professional and personal integrity." (p. 749.)

In arriving at his conclusions, the commissioner lays

stress upon the fact that the individual against whom the libel was directed was the judge of a court. In our opinion, the acts of the accused and those who participated in the conspiracy would have been fully as reprehensible if directed against the individual who filed the accusations in this proceeding, and the object and purpose had been to defeat or obstruct the administration of justice.

The other legal questions raised by the accused, to the effect that the communications made to the county attorney of Shawnee county were privileged, and the questions arising upon the objections to evidence, have all been considered in the criminal action of *The State v. Wilcox,* ante, p. 80, in which the questions were determined adversely to the defendants in that action; and therefore further comment is deemed unnecessary.

From our view of the evidence there are no new questions of law to be determined. If the accused is guilty, as charged in the supplemental accusation, the offense might well be said to involve such moral turpitude as to justify the court in ordering his name stricken from the rolls; but it becomes unnecessary to rest the decision upon that ground, when it is considered that the offense was committed as part of a scheme the purpose of which was to defeat the administration of justice, and that it likewise necessarily involved subornation of perjury. When this is said, it is manifest that the charge seriously affected his professional and personal integrity.

The court has not failed to keep in mind the importance of this proceeding to the state and to the accused. It fully appreciates the effect of a judgment which deprives him of the right to practice his profession—a judgment the hardships of which can not be measured by financial loss. The evidence, however, in support of the supplemental accusation leaves the court no alternative, and the judgment of disbarment must be entered.